IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



SALAR OMAR KARIM,

    Petitioner,

v.                                            Civil Action No. **3:16CV950**

**EDDIE L. PEARSON,**

    Respondent.

## MEMORANDUM OPINION

Salar Omar Karim, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1), challenging the manner in which the Virginia Department of Corrections ("VDOC") has calculated his sentence. Respondent moves to dismiss on the grounds that (1) Karim's claims are barred by the statute of limitations, (2) Claim One lacks merit, and (3) Claims Two through Four are procedurally defaulted. (ECF No. 11.) Karim has filed a response. (ECF No. 18.) For the reasons set forth below, Respondent's Motion to Dismiss (ECF No. 11) will be GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART.

### I. PERTINENT PROCEDURAL HISTORY

On April 26, 1996, Karim was convicted in the Circuit Court of the County of Fairfax, Virginia ("Circuit Court") of attempted capital murder and malicious burning. (ECF No. 12–1, at 1.) On May 3, 1996, the Circuit Court entered judgment against Karim and sentenced him to twenty-five years of incarceration for attempted capital murder, and five years of incarceration for malicious burning, to run concurrently. (*Id.* at 2.)

Karim was transferred to the custody of the VDOC on June 21, 1996. Motion to Dismiss Habeas Petition Ex. 1 ("Brown Aff."), *Karim v. Pearson*, No. 160207 (Va. filed Apr. 22, 2016). On August 16, 1996, the VDOC issued a Legal Update that showed: Karim had a total sentence of twenty-five years; Karim was entitled to 347 days of jail credit from the Fairfax County Jail between July 10, 1995, and June 21, 1996; Karim had an anticipated good time release date of April 9, 2018; and Karim was assigned to Level Two for purposes of receiving earned sentence credit ("ESC").[1] (*Id.* Encl. E.)[2]

On March 19, 1997, the VDOC issued another Legal Update that showed that Karim's anticipated good time release date was April 10, 2018. (*Id.*) This Legal Update also indicated that on January 8, 1997, Karim was placed in isolation and assigned to Level Four for purposes of ESC.[3] (*Id.*) On January 22, 1997, Karim was removed from isolation and reassigned to Level Two for ESC. (*Id.*)

On April 7, 1997, the VDOC issued another Legal Update that showed that Karim's anticipated good time release date was April 15, 2018, and that Karim had lost thirty days of ESC as a result of his January 8, 1997 institutional conviction for threatening bodily harm. (*Id.*) A handwritten note on a June 24, 1998 Legal Update indicates that Karim's threatening bodily harm institutional conviction was expunged on October 20, 1998. (*Id.*) As of October 21, 1998, Karim's anticipated good time release date was March 16, 2018. (*Id.*)

On December 10, 1998, the VDOC issued another Legal Update that showed that Karim's anticipated good time release date was March 17, 2018. (*Id.*) This Legal Update also showed that on October 13, 1998, Karim was placed in pre-detention and assigned to Level Four

---

[1] At Level Two, Karim earned three days of ESC for every thirty days served. Brown Aff. ¶ 12.

[2] Enclosure E is not paginated.

[3] At Level Four, Karim did not earn any ESC. Brown Aff. ¶ 12.

for purposes of ESC. (*Id.*) He was removed from detention on October 26, 1998 and was reassigned to Level Two. (*Id.*)

On July 16, 1999, the VDOC issued another Legal Update that showed that Karim's anticipated good time release date was April 6, 2018. (*Id.*) This Legal Update also showed that on May 13, 1999, Karim had been convicted of the institutional offenses of assault upon any person and threatening bodily harm. (*Id.*) Karim lost 90 days of ESC for the assault and 30 days of ESC for threatening bodily harm. (*Id.*) Karim was reassigned to Level Four for purposes of ESC. (*Id.*) On May 27, 1999, Karim was reassigned to Level Two; however, he was reassigned to Level Four on June 3, 1999. (*Id.*) Karim remained in Level Four until 2004. (*Id.*)

On March 13, 2002, the VDOC issued another Legal Update that showed that Karim's anticipated good time release date was March 5, 2020. (*Id.*) On November 19, 2001, Karim had been convicted of an attempt to commit a 100 series offense and lost 60 days of ESC. (*Id.*) On October 11, 2002, a new Legal Update showed Karim's anticipated good time release date to be March 4, 2020. (*Id.*)

On July 16, 2004, the VDOC issued a new Legal Update that showed that on June 21, 2004, Karim had been reassigned to Level Two for purposes of ESC. (*Id.*) His anticipated good time release date was calculated to be September 27, 2018. (*Id.*)

On August 15, 2005, the VDOC issued a new Legal Update that showed that on June 21, 2005, Karim had been assigned to Level Four for purposes of ESC. (*Id.*)[4] His anticipated good time release date was calculated to be January 28, 2020. (*Id.*)

On October 20, 2006, a new Legal Update showed that on June 15, 2006, Karim was reassigned to Level Two for purposes of ESC. (*Id.*) His anticipated good time release date was changed to October 29, 2018. (*Id.*)

---

[4] The Legal Update does not indicate why Karim was reassigned to Level Four at that time.

3

On July 27, 2007, the VDOC issued a new Legal Update that showed that on June 21, 2007, Karim was assigned to Level One for purposes of ESC.[5] (*Id.*) His new anticipated good time release date was calculated to be April 30, 2018. (*Id.*)

On July 10, 2015, the VDOC issued a new Legal Update that reflected an addition of 70 days of jail credit from when Karim was incarcerated in a jail in Maryland in 1995 that had not been previously factored into his sentence calculation. (*Id.*) Karim's new anticipated good time release date was calculated to be February 26, 2018. (*Id.*)

On February 5, 2016, Karim filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, in which he raised the same claims he now raises in his § 2254 Petition. On August 31, 2016, the Supreme Court of Virginia dismissed Karim's petition. (ECF No. 12–2, at 1–3.)

On November 22, 2016, Karim filed his § 2254 Petition in this Court.[6] (§ 2254 Pet. 15.)[7] Karim requests that the Court "grant him relief from violations of his . . . Fourteenth Amendment[8] rights under the United States Constitution." (Mem. Supp. § 2254 Pet. 1, ECF No. 2.) In his § 2254 Petition, Karim asserts the following claims for relief:

---

[5] At Level One, Karim earns 4.5 days of ESC for every thirty days served. Brown Aff. ¶ 18.

[6] This is the date that Karim states he placed his § 2254 Petition in the prison mailing system for mailing to this Court. The Court deems this the filed date. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

[7] The Court utilizes the pagination assigned to Karim's submissions by the CM/ECF docketing system. The Court corrects the capitalization in quotations from Karim's submissions.

[8] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. Karim also references the Fifth Amendment. (Mem. Supp. § 2254 Pet. 1.) However, as no federal officials are involved, Karim's claims are governed by the Fourteenth Amendment. *See Castillo v. McFaddan*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("[Petitioner's] citation of the Fifth Amendment was, of course, incorrect. The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States.").

4

Claim One: "Jail credit[.] The petitioner is being denied credit for time he served in a Maryland jail in violation of state law and the Constitutions of the United States and Virginia." (§ 2254 Pet. 5.)

Claim Two: "Good-time credit[.] The petitioner is being denied good-time credit in violation of state law and the Constitutions of the United States and Virginia." (*Id.* at 7.)

Claim Three: "Good-time credit[.] The petitioner is being denied good-time credit for time served in violation of state law and the Constitutions of Virginia and the United States." (*Id.* at 8.)

Claim Four: "Good-time credit[.] The petitioner is being denied good-time credit for time served in general population in violation of state law and the Constitutions of Virginia and the United States." (*Id.* at 10.)

As an initial matter, to the extent that Karim alleges violations of state law, his assertions of error under such provide no basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing cases for the proposition that "federal habeas corpus relief does not lie for errors of state law"). Accordingly, Karim's state law claims will be DISMISSED.

## II. ANALYSIS

### A. Statute of Limitations

Respondent first contends that the federal statute of limitations bars Karim's claims. Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. Specifically, 28 U.S.C. § 2244(d) now reads:

1. A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

5

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
2. The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Because Karim challenges the execution of his sentence rather than the judgment of conviction, § 2244(d)(1)(D) controls the date on which the limitation period commences. *See Childs v. Johnson*, 3:09cv793, 2010 WL 5186757, at *3 (E.D. Va. Dec. 10, 2010) (quoting *Wade v. Robinson*, 327 F.3d 328, 332–33 (4th Cir. 2003)). "[T]he relevant factual predicate for [Karim's] claims is [the] VDOC's calculation of his sentence." *Id.* (citing *Wade*, 327 F.3d at 333). The limitations period therefore began running on the date Karim could have discovered, through the exercise of due diligence, the allegedly illegal calculation of his sentence by the VDOC.

### 1. Claim One

In Claim One, Karim alleges that he "is being denied credit for time he served in a Maryland jail." (§ 2254 Pet. 5.) Specifically, Karim states that he "obtained paperwork which proved he had served 70 days in a Maryland jail on detainer status for the crime for which he is currently serving time. He also worked while in the Maryland jail and was entitled under

Virginia law to 5 days of [ESC] toward early release . . . ." (Mem. Supp. § 2254 Pet. 4, ECF No. 2.) Karim contends that despite this time served in Maryland, the VDOC only awarded him 63 days of jail credit. (*Id.*) The Court construes Claim One to contain two subparts: (a) the VDOC erred by not awarding Karim any credit for the time he spent in a Maryland jail; and (b) the VDOC erred by only awarding Karim 63 days of jail credit.

With respect to Claim One (a), Respondent contends that Karim knew about or could have discovered the factual predicate for his claim as early as July 27, 2007. (Mem. Supp. Mot. Dismiss 5, ECF No. 12.) However, the record reflects that on August 16, 1996, Karim received his first Legal Update, which showed that he had only received jail credit for the time he spent in the Fairfax County Jail. (Brown Aff. Encl. E; *see* ECF No. 2–5, at 1.) Therefore, under 28 U.S.C. § 2254(d)(1)(D), Karim had one year from his receipt of the August 16, 1996 Legal Update to file his § 2254 Petition raising Claim One (a). Karim did not do so, and thus his § 2254 Petition is approximately twenty years too late. Karim does not demonstrate any basis for tolling the statute of limitations. Accordingly, Claim One (a) is barred by the statute of limitations and will be DISMISSED.

With respect to Claim One (b), Respondent contends that Karim knew about or could have discovered the factual predicate for Claim One as early as July 27, 2007. (Mem. Supp. Mot. Dismiss 5.) However, it was not until he received the July 10, 2015 Legal Update that Karim learned that he had been granted some credit towards his sentence for the time during which he was incarcerated in a Maryland jail, and he also concluded that he believed the amount of credit granted was incorrect. After his review of that Legal Update, Karim believed that he had only received credit for 63 of the 75 days to which he asserts he is entitled. Under 28 U.S.C.

7

§ 2244(d)(1)(D), Karim had one year from his receipt of the July 10, 2015 Legal Update to file his § 2254 Petition raising Claim One (b).

Therefore, for Claim One (b), the limitation period began to run on July 11, 2015, and 209 days of the limitation period elapsed before Karim filed his state petition for a writ of habeas corpus on February 5, 2016. The limitation period remained tolled until August 31, 2016, while Karim's state petition for a writ of habeas corpus remained pending before the Supreme Court of Virginia. The limitation period began to run again on September 1, 2016, and 82 days of the limitation period elapsed before Karim filed his § 2254 Petition on November 22, 2016. Since only 291 days of the limitation period elapsed, Karim's § 2254 Petition is timely with respect to Claim One (b), and Respondent has failed to carry his burden of establishing that the statute of limitations bars Claim One (b). Thus, the Motion to Dismiss will be DENIED WITHOUT PREJUDICE with respect to Claim One (b).

### 2. Claim Two

In Claim Two, Karim alleges that the VDOC has improperly denied him ESC or good-time credit. (§ 2254 Pet. 7.) Specifically, Karim contends that from June 3, 1999, until June 21, 2004, he was classified at Level Four and therefore earned no ESC. (Mem. Supp. § 2254 Pet. 7.) He argues that he is "entitled to the [ESC] that he would have received had he been appropriately assigned to Level II, from October 13, 1998 through October 21, 1998, May 13, 1999 through May 27, 1999, and from June 30, 1999 through June 21, 2004, a cumulative period of 186 days." (*Id.*) The July 16, 2004 Legal Update reflects that, on June 21, 2004, Karim was reassigned to Level Two for purposes of ESC. (Brown Aff. Encl. E.) Therefore, under § 2244(d)(1)(D), Karim had, at the latest, one year from his receipt of the July 16, 2004 Legal Update to file his § 2254 Petition raising Claim Two. Karim did not do so. His November 22, 2016 petition

significantly post-dates the limitation period. Karim does not demonstrate any basis for tolling the statute of limitations. Therefore, Claim Two is barred by the statute of limitations and will be DISMISSED.

### 3. Claim Three

In Claim Three, Karim asserts that he "is being denied [ESC] for time served." (§ 2254 Pet. 8.) Specifically, Karim argues that on June 21, 1996, he was provided a Legal Update sheet that indicated an ESC or good time release date of November 25, 2016. (Mem. Supp. § 2254 Pet. 8.) However, on August 16, 1996, he received a new Legal Update sheet that showed an ESC or good time release date of April 9, 2018. (*Id.*) Karim contends that he is entitled to the return of the lost 500 days. (*Id.*) Under § 2244(d)(1)(D), Karim was clearly aware of the basis for Claim Three by August 16, 1996. Therefore, Karim had one year from his receipt of the August 16, 1996 Legal Update sheet to file his § 2254 Petition raising Claim Three. Again, Karim did not do so, and his November 22, 2016 § 2254 Petition is more than nineteen years too late. Karim does not demonstrate any basis for tolling the statute of limitations. Thus, Claim Three is barred by the statute of limitations and will be DISMISSED.

### 4. Claim Four

Establishing the date on which the factual predicate of Claim Four could have been discovered through the exercise of due diligence presents a more difficult task. In Claim Four, Karim claims that the VDOC has "denied [him] good-time credit for time served in general population." (§ 2254 Pet. 10.) Specifically, Karim contends that he "did not receive sufficient good-time credit while he was classified at Level II status prior to 2007, nor did he receive additional good-time credit while he was enrolled in educational programs at Marion Correctional Center." (Mem. Supp. § 2254 Pet. 9.)

9

On this record, it is not readily apparent when a petitioner, acting with due diligence, could have discovered that he had not received the correct amount of ESC. The Legal Updates that Karim received do not state how many ESCs Karim had earned as of the date of the Legal Updates. The Legal Updates merely project an anticipated good time release date, which appears to be a function of the total sentence, minus the term served, minus any ESCs earned as of the date of the Legal Update, minus a projection of how many ESCs an inmate may earn in the future, and minus an additional thirty days. Respondent fails to explain how Karim could have discovered any errors as to any amount of ESCs due simply by examining the Legal Updates and the anticipated good time release dates reflected therein. Respondent has failed to carry his burden of establishing that the statute of limitations bars Claim Four.

## B.     Exhaustion and Procedural Default

Respondent also contends that Claims Two, Three, and Four are procedurally defaulted. (Mem. Supp. Mot. Dismiss 9.) As discussed below, the Court agrees.

State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n.10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the

remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan*, 513 U.S. at 365–66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*,

501 U.S. at 735 n.1).[9] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010). Absent a showing of cause and prejudice or his actual innocence, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Here, the Supreme Court of Virginia found that Claims Two, Three, and Four of the instant petition were untimely under Section 8.01-654(A)(2) of the Virginia Code. (*See* ECF No. 12–2, at 2–3.) Virginia's statute of limitations for habeas actions is an adequate and independent procedural rule when so applied. *See George v. Angelone*, 100 F.3d 353, 363–64 (4th Cir. 1996); *Sparrow v. Dir. Dep't of Corr.*, 439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006). Karim offers no suggestion of cause and prejudice or actual innocence to excuse his default. Thus, Claims Two, Three, and Four are barred from review here and will be DISMISSED.

### C. Merits of Claim One

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

---

[9] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

With respect to Claim One, the Supreme Court of Virginia stated:

> In a portion of claim (a), petitioner contends the Department of Corrections has miscalculated his release date because it failed to give him credit for seventy days he served in a Maryland jail while awaiting trial.
> The Court holds this claim is without merit. The record, including the affidavit from Wendy K. Brown, Legal Services Community Release Manager for the Department of Corrections, and a March 30, 2016 sentence summary audit, demonstrates the Department of Corrections has credited petitioner with seventy days for his detention in Maryland between May 1, 1995 and July 10, 1995.
> In another portion of claim (a), petitioner contends the Department of Corrections has miscalculated his release date because it failed to give him 2.25 days of good-time credit for every thirty-day period he served in a Maryland jail while awaiting trial. Accordingly, petitioner contends he is entitled to approximately 5.25 days of credit he has not received.
> The Court holds this claim, which concerns the rate at which petitioner's good conduct or sentence credit is calculated, is not cognizable in a petition for a writ of habeas corpus "because an order entered in the petitioner's favor . . . will not result in an order interpreting convictions or sentences that, on its face and standing alone, will directly impact the duration of the petitioner's sentence." *Carroll v. Johnson*, 278 Va. 683, 694, 685 S.E.2d 647, 652 (2009).

(ECF No. 12–2, at 1–2.)

Respondent asserts that the Supreme Court of Virginia's determination "is entitled to a presumption of correctness" because the VDOC properly credited Karim's sentence for the time he was incarcerated in a Maryland jail. (Mem. Supp. Mot. Dismiss 7.) However, no calculation or analysis specific to Karim's sentence undergirds this assertion. Rather, Respondent references

13

the affidavit of Wendy K. Brown, the Manager of the Court and Legal Services Section of the VDOC. Ms. Brown swears:

> The Maryland credit was added to Karim's time computation record on July 10, 2015. A Legal Update was generated on July 10, 2015, reflecting the additional 70 days of Maryland credit and was provided to Karim. A copy of the Legal Update is attached as Enclosure C.
> Karim wrote to the VDOC on November 23, 2015, complaining that when the VDOC credited him with 70 days from the Maryland [jail], his release date did not change by 70 days. The Correspondence Unit wrote to Karim on December 1, 2015, and advised him when the credit from Maryland was added to his record on July 10, 2015, his time was recalculated and a new projected release date was established. The addition of the credit days are not subtracted directly from the previous projected release date. A copy of Karim's letter and the VDOC's letter is attached as Enclosure D.

(Brown Aff. ¶¶ 8–9 (paragraph numbers omitted).) Without a calculation or analysis specific to Karim's sentence, the Court is unable to determine whether the Supreme Court of Virginia's determination is entitled to deference.

Moreover, the Supreme Court of Virginia did not address Karim's claim that he is entitled to approximately 5 days of ESC because he worked during the time he spent in a Maryland jail.[10] Instead, the Supreme Court of Virginia concluded that his claim was not cognizable in habeas corpus pursuant to *Carroll*. Therefore, the Supreme Court of Virginia's dismissal of this claim did not constitute an adjudication "on the merits" for purposes of 28 U.S.C. § 2254(d). *Boger v. Young*, No. 7:10CV00175, 2010 WL 4861616, at *3 (W.D. Va. Nov. 23, 2010). This Court will conduct a *de novo* review of this portion of Claim One. *See Scott v. Vargo*, No. 2:14CV25, 2014 WL 11514067, at *2 (E.D. Va. Sept. 5, 2014) (citing *Hudson v. Hunt*, 235 F.3d 892, 895 (4th Cir. 2000)), *R&R adopted by* 2014 WL 11512873 (E.D. Va. Oct. 8, 2014), *appeal dismissed*, 594 F. App'x 167 (4th Cir. 2015). However, Respondent has not

---

[10] The Supreme Court of Virginia did not specifically refer to this period of time claimed by Karim as work credit. However, in his state habeas petition, Karim argued that he was "also entitled to 5.25 days of good-time credit for working while in jail." Petition for a Writ of Habeas Corpus at 9, *Karim v. Pearson*, No. 160207 (Va. filed Feb. 5, 2016). He rounded the 5.25 days down to five days. *Id.*

14

addressed the merits of Karim's claim regarding his asserted entitlement to approximately 5 days of ESC.

For the foregoing reasons, Respondent's Motion to Dismiss will be DENIED with respect to Claim One (b). Respondent will be DIRECTED to file, within thirty (30) days of the date of entry hereof, a further response that must address the merits of Claim One (b). The response must include a detailed calculation or analysis regarding the award of credit toward Karim's sentence for the time he spent incarcerated in a Maryland jail.

### III. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 11) will be GRANTED with respect to Claims One (a), Two, Three, and Four and DENIED WITHOUT PREJUDICE with respect to Claim One (b). Claims One (a), Two, Three, and Four will be DISMISSED. Respondent will be DIRECTED to file, within thirty (30) days of the date of entry hereof, a further response that must address the merits of Claim One (b). The response must include a detailed calculation or analysis regarding the award of credit toward Karim's sentence for the time he spent incarcerated in a Maryland jail. Karim will have 60 days from the date of entry hereof to file a reply to Respondent's response.

An appropriate Order shall issue.

/s/
Roderick C. Young
United States Magistrate Judge

Date: August 1, 2017
Richmond, Virginia

15